UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61917-Civ-LENARD
MAGISTRATE JUDGE P.A. WHITE

TERRENCE BROMELL,                    :

    Petitioner,                  :

v.                                   :          <u>REPORT OF</u>
                                                <u>MAGISTRATE JUDGE</u>
WALTER A. McNEIL,[1]                 :

    Respondent.                  :

_____

## I. <u>Introduction</u>

Terrence Bromell, a state prisoner currently confined in South
Bay Correctional Facility at South Bay, Florida, has filed a <u>pro</u> <u>se</u>
petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in
this Court, attacking his conviction entered in Case No. 02-17831
in the Broward County Circuit Court.

This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2254 Cases in the
United States District Courts.

For its consideration of the petition, the Court has the
petitioner's response to an order regarding the limitations period
with supporting exhibits, the respondent's response to an order to
show cause with multiple exhibits, and the petitioner's reply with
attached exhibits.

_____

[1]Walter A. McNeil, has replaced James R. McDonough as Secretary of the
Florida Department of Corrections, and is now the proper respondent in this
proceeding. McNeil should, therefore, "automatically" be substituted as a party
under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket
and change the designation of the Respondent.

## II. <u>Claims</u>

Bromell raises the following grounds for relief:

1.   The trial court erred in overruling his objection to the
     state's discovery violation.

2.   He received ineffective assistance of trial counsel,
     because his lawyer failed to investigate the facts of
     the case and prepare an effective defense when he did
     not obtain the fingernail clippings from the victim to
     have them independently tested for DNA evidence and when
     he did not object to the state's failure to disclose DNA
     evidence favorable to the defense.

3.   He received ineffective assistance of trial counsel when
     his lawyer failed to depose state witness I.D.
     technician Amy Seeley and call her as a defense witness
     at trial and when he did not object to the state's
     failure to disclose to the defense the favorable
     fingerprint evidence.

4.   He received ineffective assistance of trial counsel,
     because his lawyer failed to request independent
     fingerprint testing of the victim's keys and failed to
     request the state's findings of the fingerprint testing
     conducted by Seeley and, instead, improperly relied upon
     hearsay testimony to impeach the state witnesses.

5.   He received ineffective assistance of trial counsel,
     because his lawyer failed to object to inconsistent
     testimony provided by the police officers and their
     reports.

6.   He received ineffective assistance of trial counsel,
     because his lawyer failed to properly advise him
     regarding the decision whether he should testify in his
     own behalf and failed to call his brother as a defense
     witness at trial.

7.   The trial court lacked jurisdiction to enter judgment in
     the case, because the charging instrument was not based
     upon sworn testimony of a material witness, but based
     solely upon the investigating officer's affidavit.

## III. <u>Procedural History</u>

The pertinent procedural history of this case is as follows.

Bromell was charged by information with carjacking with a firearm. (DE# 10; Ex. 2). He entered a plea of not guilty to the crime charged and the case proceeded to trial before a jury, after which he was found guilty of the lesser included offense of carjacking. (DE# 10; Ex. 3). Bromell was adjudicated guilty of the offense and he was sentenced to a term of imprisonment of life with a fifteen-year minimum mandatory term as an habitual violent felony offender and a thirty-year minimum mandatory term as a prison releasee reoffender. (DE# 10; Ex. 1, 4). Bromell prosecuted a direct appeal from his conviction, raising the sole claim that the trial court erred in overruling his objection to the discovery violation when the state produced an enlarged copy of his booking photograph after opening statements had been made. (DE# 10; Ex. 6). The Florida Fourth District Court of Appeal *per curiam* affirmed the conviction and sentence in a decision without written opinion. (DE# 10; Ex. 9). See also Bromell v. State, 902 So.2d 810 (4 DCA 2005)(table).

Bromell also pursued state postconviction relief in both the trial and appellate courts. He first filed a pro se motion pursuant to Fla.R.Crim.P. 3.850 in the trial court, raising the identical claims of ineffective assistance of trial counsel presented here, except for the portion of ground six regarding trial counsel's failure to call his brother as a defense witness. (DE# 10; Ex. 11). The motion was subsequently amended to include the identical claim presented here as ground seven. (DE# 10; Ex. 13). The state filed its response with attached exhibits, arguing that Bromell was not entitled to postconviction relief in that he had failed to demonstrate that he received ineffective assistance of trial counsel for the reasons alleged and the claim that the trial court lacked jurisdiction was meritless. (DE# 10; Ex. 14). The trial court entered an order summarily denying the Rule 3.850 motion for the reasons expressed by the state in its response, a copy of which

was attached to the trial court's order. (DE# 10; Ex. 15). Bromell took an appeal from the trial court's ruling, raising the claims presented here as grounds two through seven, which included the portion of ground six not earlier raised in the Rule 3.850 motion, as supplemented. (DE# 10; Ex. 17). The Florida appellate court affirmed the trial court's ruling in a per curiam affirmance without written opinion. (DE# 10; Ex. 18, 19). See also Bromell v. State, 967 So.2d 920 (Fla. 4 DCA 2007)(table). Bromell also unsuccessfully pursued state habeas corpus relief in the appellate court, raising grounds not relevant to this federal proceeding. (DE# 10; Ex. 20-26). Soon after all state court proceedings had concluded, Bromell came to this Court filing the instant pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

IV.  Threshold Issues-Timeliness, Exhaustion and Procedural Bar

In his response to the order to show cause, the respondent rightfully does not challenge the timeliness of this petition. See 28 U.S.C. §2244(d). The respondent asserts, however, that Bromell is not entitled to review on the merits of claims one and the portion of claim six involving the calling of Bromell's brother as a witness at trial in that the claims are unexhausted and procedurally barred from federal habeas corpus review.

It is beyond dispute that before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies; 28 U.S.C. §2254(b),(c),[2] thereby giving the state the

_____

[2]The terms of 28 U.S.C. §2254(b) and (c) provide in pertinent part as follows:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
        (A) the applicant has exhausted the remedies available in the courts of      the State; or

"'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Baldwin v. Reese</u>, 541 U.S. 27, 29-30 (2004)(<u>citing</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995)(per curiam)(<u>quoting</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). Further, to provide the state with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court thereby alerting that court to the federal nature of the claim. <u>Baldwin</u>, 541 U.S. at 29-30; <u>Duncan</u>, 513 U.S. at 365-366. <u>See also</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999). The mere similarity between a claim of state and federal error is insufficient to establish exhaustion. <u>See</u> <u>Duncan v. Henry</u>, 513 U.S. at 366 (noting petitioner's failure to apprise state courts that evidentiary challenge was based in part on federal due process concerns was insufficient to exhaust §2254 due process claim; further noting mere similarity of claims was insufficient). <u>See also</u> <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11 Cir. 2005)(holding that petitioner must "fairly present his federal constitutional claim to the state court" and do more than "scatter some makeshift needles in the haystack" to do so)(citations omitted), <u>cert</u>. <u>denied</u>, 547 U.S. 1073 (2006). Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996).

"The teeth of the exhaustion requirement comes from its

---

(B)(i) there is absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
.    .    .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

5

handmaiden, the procedural default doctrine." <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11 Cir. 2001). Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." <u>Id</u>., *citing*, <u>O'Sullivan</u>, 526 U.S. at 845-46. Under the first exception, to establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11 Cir. 1999). <u>See also</u> <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). To show prejudice, in essence, a petitioner must demonstrate that there is at least a reasonable probability that the outcome of the proceeding would have been different. <u>See</u> <u>Crawford v. Head</u>, 311 F.3d 1288, 1327-28 (11 Cir. 2002). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent.[3] <u>See</u> <u>House v. Bell</u>, 547 U.S. 518 (2006); <u>Dretke v. Haley</u>, 541 U.S. 386, 124 S.Ct. 1847 (2004). The actual innocence exception to the unreviewability of procedurally defaulted claims is applied only in the rarest of cases; <u>see</u> <u>Dretke</u>, 541 U.S. at 392-93. <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614 (1998), *quoting*, <u>Schlup v. Delo</u>, 513 U.S. 298,

---

[3]The Supreme Court has reiterated the standard to be applied to claims of actual innocence. <u>See</u> <u>House v. Bell</u>, 547 U.S. 518, 126 S.Ct. 2064, 2077 (2006)(<u>citing</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 319-322, 324 (1995)). The Supreme Court noted that while the "standard is demanding and permits review only in the 'extraordinary' case", the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence." <u>Id</u>. (citations omitted). Accordingly, "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." <u>Id</u>. In the habeas context, "actual innocence" means factual innocence, not mere legal insufficiency. <u>Bousley v. U.S.</u>, 523 U.S. 614, 623 (1998). The petitioner must support the actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324.

327-328 (1995).

In Florida, exhaustion is ordinarily accomplished on direct appeal. If not, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979). Regarding ground one of the instant petition, the record shows that Petitioner did not raise the claim as a federal due process claim before the Florida appellate court, and the Florida appellate court did not address it as such. Review of Petitioner's brief on direct appeal reveals that he maintained that the state trial court violated state law principles when it concluded that the state had not violated state discovery rules with regard to an enlarged copy of Bromell's booking photograph and, even if a discovery violation had occurred, Bromell had suffered no prejudice as a result, rendering the subject evidence admissible at trial. <u>See</u> Initial Brief of Appellant at 16. (DE# 10; Ex. 6). Bromell cited no federal law or constitutional right that was violated by the state trial court's alleged failure to find a discovery violation on the part of the state and failure to exclude the subject evidence. <u>Id</u>. While Bromell did present the state court with the facts underlying any possible federal due process claim, his brief on direct appeal fails to indicate that he was seeking relief under any specific federal constitutional guarantee. That is fatal. <u>See</u> <u>Petrucelli v. Coombe</u>, 735 F.2d 684, 687-688 (2 Cir. 1984)(holding that to satisfy the exhaustion requirement, "a prisoner must have fairly presented the same legal claim to the state courts that he presents in his federal habeas petition. Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims ... a mere statement that due process rights

7

have been violated does not necessarily give rise to a specific
federal constitutional claim.")


    Based upon the well-settled principles regarding exhaustion,
claim one of this petition has not been properly exhausted. <u>See</u>
<u>Baldwin</u>, 541 U.S. at 30-2. <u>See also</u> <u>Keller v. Larkins</u>, 251 F.3d
408, 413-15 (3 Cir.)(holding that habeas petitioner's claim of
violation of federal due process in admission at murder trial of
evidence of his gang connections was unexhausted where petitioner
argued in state court that the admission of the evidence violated
state standards regarding proof of uncharged bad acts and that its
prejudicial impact outweighed its probative value, but neither the
federal Constitution nor any judicial decision based on the federal
Constitution was mentioned and passing references in state court to
the concept of a "fair trial" were insufficient to give the state
courts fair notice that petitioner was asserting a federal
constitutional claim), <u>cert.</u> <u>denied</u>, 534 U.S. 973 (2001).

    When a federal habeas petition raises a claim that has not
been exhausted in state proceedings, the district court ordinarily
must either dismiss the petition, "leaving the prisoner with the
choice of returning to state court to exhaust his claims or of
amending or resubmitting the habeas petition to present only
exhausted claims to the district court," <u>Kelley v. Secretary for
Dept. of Corr</u>., 377 F.3d 1317, 1351 (11 Cir. 2004)(internal
quotation marks omitted), or grant a stay and abeyance to allow the
petitioner to exhaust the unexhausted claim, <u>see Rhines v. Weber</u>,
544 U.S. 269, 277-79, 125 S.Ct. 1528, 1535-36, 161 L.Ed.2d 440
(2005). "[W]hen it is obvious that the unexhausted claims would be
procedurally barred in state court due to a state-law procedural
default, [the district court] can forego the needless 'judicial

8

ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Kelley, 377 F.3d at 1351 (internal quotation marks omitted).

The petitioner's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law in any future attempt to exhaust.[4] Because the ground raised here is now irrevocably barred from consideration by the state courts, this Court should treat the unexhausted claim as procedurally barred as well.[5] See Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999). Since Bromell has not alleged, let alone demonstrated, objective cause for the failure to properly raise the claim in the state courts and actual prejudice resulting from the error complained of, he cannot overcome the bar.[6] See O'Sullivan v.

_____

[4]Petitioner has already pursued a direct appeal and in Florida, issues which could be but are not raised on direct appeal may not be the subject of a later motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850. Kennedy v. State, 547 F.2d 912 (Fla. 1989). Further, even if claim one was amenable to challenge pursuant to a Rule 3.850 motion, it cannot now be raised in a later Rule 3.850 motion because, except under limited circumstances not present here, Florida law bars successive Rule 3.850 motions. See Fla.R.Crim.P. 3.850(f). See also Moore v. State, 820 So.2d 199, 205 (Fla. 2002)(holding that a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion). Also, any second motion seeking relief under Rule 3.850 would be time barred in that it would be filed more than two years from the date Bromell's judgment of conviction became final in 2005. See Fla.R.Crim. P. 3.850(b).

[5]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

[6]If Petitioner were to contend in this federal proceeding that he should be excused from the procedural default because the default was due to appellate counsel's failure to raise the subject claim in federal constitutional terms on direct appeal, such argument would be unavailing. The claim of ineffective assistance of counsel may constitute cause for a procedural default; see Murray v. Carrier, 477 U.S. 478 (1986), except when the ineffective assistance of counsel claim itself has been procedurally defaulted. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In Florida, a claim of ineffective assistance of

Boerckel, 526 U.S. at 848-49; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); United States v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977). Moreover, application of the bar is appropriate in this case, because Bromell has not established that a fundamental miscarriage of justice will result from application of the bar in that he has failed to meet the high standard of factual innocence.[7] See House v. Bell, 547 U.S. at 538 (holding actual innocence requires substantive review only in extraordinary cases). See also Dretke, 541 U.S. at 392-93. Accordingly, Bromell is not entitled to federal habeas corpus review on the merits of claim one. See O'Sullivan v. Boerckel, 526 U.S. at 848-49. See also Coleman v. Thompson, 501 U.S. at 750-51; United States v. Frady, 456 U.S. at 168; Wainwright v. Sykes, 433 U.S. 72 (1977).

It is noted that even if claim one was not procedurally barred

---

appellate counsel is presented by way of a state petition for writ of habeas corpus filed in the appropriate state appellate court. State v. Dist. Ct. of Appeal, First Dist., 569 So. 2d. 439 (Fla. 1990). Although Bromell filed such a state petition it was on a different grounds. See Petition for Writ of Habeas Corpus (Alleging Ineffective Assistance of Appeal Counsel). (DE# 10; Ex. 26). Thus, the ineffective assistance of appellate counsel claim is itself unexhausted and procedurally barred from state review in that Bromell cannot now return to state court to pursue the ineffective assistance of appellate counsel claims. See Fla.R.App.P. 9.141(c)(4)(B)(stating that "[a] petition alleging ineffective assistance of appellate counsel shall not be filed more than 2 years after the conviction becomes final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel.")

[7]In this federal proceeding, Bromell has come forward with no new reliable evidence to support any claim of actual innocence. With regard to possible exculpatory testimony from his brother, who Bromell claims would have explained his presence at the nearby gas station when apprehended, Bromell has not provided this Court with an affidavit from his brother or any other form of reliable evidence to support a claim of actual innocence. Further, the strong evidence admitted at trial demonstrates Bromell's guilt of the offense with which he was convicted. The evidence includes identification testimony from the victim and other eyewitness testimony, and also includes physical evidence (i.e., the victim's car keys in Bromell's possession when apprehended by the police). See Trial Transcript at 98, 101-02, 131-34, 182. (DE# 10; Ex. 28).

10

from federal habeas corpus review, Bromell would not be entitled to federal habeas corpus review on this claim. The manner in which a state trial court conducts proceedings regarding alleged discovery violations is a matter of state law and not cognizable in a writ of habeas corpus unless the hearing and ultimate ruling rendered the trial fundamentally unfair.[8] "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," Alderman v. Zant, 22 F.3d 1541, 1555 (11 Cir. 1994), since the state court "has wide discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so." Lynd v. Terry, 470 F.3d 1308, 1314 (11 Cir. 2006). See also Baxter v. Thomas, 45 F.3d 1501, 1509 (11 Cir. 1985)(federal habeas corpus is not vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11 Cir. 1984)(federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections).

Moreover, federal courts are bound by a state court's interpretation of its own rules of evidence and procedure. Machin v. Wainwright, 758 F.2d 1431, 1433 (11 Cir. 1985). Admission of prejudicial evidence may support habeas corpus relief only where the evidence is "material in the sense of a crucial, critical, highly significant factor." Id., (quoting Osborne v. Wainwright, 720 F.2d 1237, 1238-39 (11 Cir. 1983)). In Machin, the Eleventh Circuit found that the "surprise" disclosure did not rise to the

---

[8]Counsel sought the exclusion of the subject photograph as a discovery violation and sought relief pursuant to Richardson v. State, 246 So.2d 771 (Fla.1971). In Richardson, the Florida Supreme Court held that where the prosecution violates discovery rules, a trial court should conduct a hearing to determine the fairness and prejudice to the accused of allowing use of the undisclosed evidence at trial.

level of a constitutional due process violation. 758 F.2d at 1433, 1434. Likewise, in the instant case, there was no constitutional due process violation. The evidence admitted at trial reveals that the victim identified Bromell as the perpetrator in a pretrial photographic lineup; an eyewitness identified Bromell as the perpetrator during a showup procedure; there was an in-court identification of Bromell as the perpetrator; and keys found on Bromell at the time of his apprehension unlocked and started the victim's vehicle. See Trial Transcript at 41, 98, 101-02, 131-34, 182. (DE# 10; Ex. 28). Thus, even if the admission of the subject evidence was improper, such error had no substantial and injurious effect or influence in determining the jury's verdict. See Sims v. Singletary, 155 F.3d at 1312, quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). Bromell was not denied a fundamentally fair trial.

Bromell has also failed to properly exhaust the portion of claim six that trial counsel rendered ineffective assistance when counsel failed to call his brother as a defense witness at trial. Other than a casual reference to his brother as a witness and potential exculpatory testimony, this claim was never truly raised in the Rule 3.850 motion, as supplemented, and was never addressed by the state in its response to the Rule 3.850 motion or the trial court in its order of denial. The ground was presented as a true claim only in Bromell's brief on appeal from the denial of his Rule 3.850 motion. See Initial Brief of Appellant at 13-4. (DE# 10; Ex. 17). The state was not required to file an Answer Brief, see Bromell v. State, No. 4D07-1903; see also http://www.4dca.org.,[9] and the affirmance of the denial of postconviction relief was

---

[9]The Court takes judicial notice of information available at the database maintained by the Clerk of Court, Florida Fourth District Court of Appeal, http://www.4dca.org, viewed on this date in Bromell v. State, No. 4D07-1903 (Fla. 4 DCA). See Fed.R.Evid. 201.

accomplished without a written opinion. See <u>Bromell v. State</u>, 967 So.2d 920 (Fla. 4 DCA 2007)(table). Bromell should have presented the subject ineffective assistance of trial counsel claim along with his other claims in his Rule 3.850 motion. He, however, failed to do so. It is well settled under both federal and state law that an appellant may not appropriately raise an issue for the first time by way of an appellate brief. <u>See generally</u> <u>United States v. Fiallo-Jacome</u>, 874 F.2d 1479, 1481 (11 Cir. 1988); <u>Doyle v. State</u> 526 So.2d 909, 911 (Fla. 1988)(holding that claims which could have been raised in motion to vacate judgment and sentence were procedurally barred and could not be raised for first time on appeal of denial of such motion).

This portion of the claim raised here as ground six was, therefore, never reviewed by the state trial court or appellate court, rendering it unexhausted. See 28 U.S.C. §2254(b),(c). As indicated herein, in Florida, if not on direct appeal, exhaustion may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d at 808. Since Bromell has already filed a Rule 3.850 motion, challenging the representation received from trial counsel, and taken an appeal from its denial, the unexhausted subclaim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law, rendering it procedurally defaulted from federal review as well. See <u>Collier v. Jones</u>, 910 F.2d 770, 773 (11 Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well); <u>Parker v. Dugger</u>, 876 F.2d 1470, 1477-78 (11 Cir. 1989)("plain statement" rule of <u>Harris v. Reed</u>, 489 U.S. 255 (1989), does not apply when a claim was never presented in state court). For the identical reasons stated above in connection with ground one, Bromell cannot overcome

the procedural bar in that he cannot establish cause and prejudice for failure to properly raise the claim in the state courts and he cannot demonstrate that a fundamental miscarriage of justice will result if the claim is not reviewed on the merits. Even if reviewed on the merits, Bromell would not be entitled to federal habeas corpus relief on the subclaim as indicated herein  in connection with the discussion of ground six.

### V. <u>Standard of Review</u>

Pursuant to 28 U.S.C. §2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Habeas relief is available only in cases where the claims were adjudicated on the merits and the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in state court." <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), <em>cert. denied</em>, ___ U.S. ___, 128 S.Ct. 2053 (April 21, 2008). Clearly established federal law embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." <u>Stewart v. Sec'y, Dep't of Corrs.</u>, 476 F.3d 1193, 1208 (11 Cir. 2007).  Further, a decision is "contrary to" established law if (1) the state court arrived at an opposite conclusion on a question of law as interpreted by the Supreme Court or (2) the court arrived at a different result when confronted with "materially indistinguishable" facts from relevant Supreme Court precedent. <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236

(11 Cir. 2007), *cert. denied*, U.S. ___, 122 S.Ct. 846 (2008). An application of established law is unreasonable "if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context." Id.

"[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*quoting* Early v. Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007).

## VI. Facts

The facts of this case as revealed by the evidence admitted at trial are as follow. The victim, a professional gambler, was carrying $100,000.00 in her purse when leaving the Seminole Indian casino. (Trial Transcript at 24-27)(DE# 10; Ex. 28). On her way home, she decided to stop at the grocery story. Id. at 26-8. While loading the groceries in the rear passenger seat of her truck, she was accosted by two men. Id. at 28-34. One man, armed with a gun, was standing in the rear of the truck in front of the shopping cart while the second man was standing in front of the truck. Id. Upon

seeing the armed perpetrator, the victim threw her purse into the rear of the truck and attempted to enter the front of the truck, but she was prevented from doing so by the second perpetrator. Id. The victim next attempted to lock the doors of the truck, using her key remote control. Id. at 35-6. Because of her nervous state, she fumbled with the remote control and lost her grip of the keys. Id. at 36. The keys dropped to the ground, and a struggle ensued over the keys, resulting in the perpetrator gaining possession of the keys. Id. at 36-7. The victim attempted to prevent the armed perpetrator from entering the truck and driving off by pulling at his shirt and scratching his face and neck with her long fingernails. Id. at 37-9, 59-60. When the armed perpetrator began to drive off in the truck, the victim jumped out of the truck and the perpetrator sped off, just missing the legs of the victim who was then down on the ground. Id. at 39-40. A bystander telephoned the police and the victim's truck was discovered shortly thereafter, having been abandoned. Id. at 119-22, 202-04. The armed perpetrator was apprehended seven blocks from the scene of the events and Bromell was unequivocally identified as the armed perpetrator by an eyewitness to the crime. Id. at 98-102, 128-34, 201-02, 204-06, 210-11. When apprehended, a search of Bromell produced a set of car keys, and the keys were the victim's keys to the truck. Id. at 132-34, 152-53. Due to her emotional state, the victim did not make an identification at that time. Id. Approximately one-week after the criminal incident, a photographic identification procedure was conducted during which the victim selected Bromell's photograph and identified him as the armed perpetrator. Id. at 48-51, 178-83. The victim's purse and money were never recovered, but one of her credit cards was used later the same day of the incident. Id. at 63-4, 124, 134.

VII. Discussion

16

A. <u>Ineffective Assistance of Trial Counsel</u>

Bromell alleges that he received ineffective assistance of trial counsel for various enumerated reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The claims are meritless.


Bromell claims in ground two that he received ineffective assistance of trial counsel, because his lawyer failed to obtain the victim's lost fingernails for independent DNA testing. He also claims that his lawyer's performance was ineffective when he did not object to the state's failure to disclose exculpatory DNA evidence. Specifically, Bromell contends that the victim had repeatedly maintained that she had physically struggled with the perpetrator and had scratched him, causing her to break and lose several of her nails during the criminal incident. Bromell alleges that his lawyer should have located the victim's fingernails and had them independently tested in order to demonstrate that it was not his DNA under the victim's fingernails and/or required the state to conduct such testing and reveal the allegedly exculpatory evidence to the defense.


The record reveals that the defense at trial was misidentification and that the state had not proved beyond a reasonable doubt that it was in fact Bromell who was the armed perpetrator. As early as opening statement, trial counsel apprised the jury of the defense case, stating in pertinent part as follows:

> The evidence will show that [the victim] wears these very long
> designer nails... And that [the victim] struggled with this
> man so hard that on one hand she ripped the nails right off

17

her hand, and her nails were just bleeding bloody. And there's
pictures of that that you may see, yet no blood on Mr.
Bromell, no DNA evidence that they are able to show from the
car or Mr. Bromell that matches anything in this case, you
will not hear any evidence of that.

(Trial Transcript at 22)(DE# 10; Ex. 28). During his cross-
examination of the victim, besides challenging the identification
testimony as unreliable, trial counsel pointed out that the victim
had been wearing long "designer" finger nails and that during the
subject incident two of her fingernails were "ripped right off the
fingers," causing her to bleed. Id. at 59-60. The victim further
testified that the police had taken pictures of her hands, showing
the blood and loss of fingernails. Id. at 61. During the cross-
examination of the law enforcement officers, defense counsel
pointed out that fingerprints taken in the truck did not match
Bromell's fingerprints and that when Bromell was apprehended, he
was not in possession of the victim's purse, the victim's cash or
a gun. Id. at 139, 160-61, 195. He also obtained testimony that
upon his apprehension, Bromell did not appear to have been injured
by the victim and counsel also admitted a photograph into evidence
indicating that Bromell had a mark on his face before the subject
incident. Id. at 192-93, 224-25.


    In furtherance of the defense, trial counsel repeatedly
attempted to demonstrate to the jury that the police work and
investigation in the case were shoddy. Accordingly, during closing
argument, defense counsel focused on the lack of physical evidence,
blaming poor police work, and argued that such a lack of evidence
linking Bromell to the subject crime created reasonable doubt. Id.
at 239-57. In relevant part, counsel stated as follows:

        What else didn't come from the car? What else is a lack of
        evidence. DNA. What do we have in the car? We have an
        individual who's committing this crime, who's being scratched,
        and pulled, and beat on. I mean picture up here - - look at

18

this photograph of this lady with the bloody fingers, and the bloody finger tips. You're going to be able to look at it again in the jury room. What is (sic) going to tell you about this photograph? If this is what her fingers looked like and if she grabbed that [person] around the neck or the face or the shirt, like she testified she did, what are we going to find both in the car and on [the] subject of the crime? Blood, DNA, transferring of evidence. You heard nothing here about that. Absolutely nothing. There's no testimony from any technicians, experts, anybody. That's a lack of evidence. It's their burden of proof to present the evidence to you, to prove this case beyond a reasonable doubt. They didn't do it. [The prosecutor] can't do it because he doesn't have the evidence. If he didn't have the evidence that's reasonable doubt.

Id. at 250-51.

When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. denied, 537 U.S. 812 (2002), quoting, Strickland v. Washington, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Strickland v. Washington, 466 U.S. at 690-91. Even if in retrospect

the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1145 (11 Cir. 1983).

It is apparent from review of the record that after conducting an investigation into the facts of the case, trial counsel made the strategic decision not to obtain the victim's lost fingernails, not request a DNA test be conducted of the fingernails, and not present expert testimony regarding any such evidence. Instead, he elected to argue to the jury that the lack of such evidence presented by the state required a finding of not guilty in that the state had failed to meet its burden of proof beyond a reasonable doubt. Defense counsel apparently concluded that the results of a DNA test could have negatively affected the defense presented, especially in light of the strong identification testimony and fact that the victim's keys for her truck were found in Bromell's possession at the time he was apprehended. Trial counsel's decision was based upon sound trial strategy based upon the facts of the case.

Since there was no DNA evidence in the case from the state or defense, defense counsel was able to advise the jury of the lack of physical or forensic evidence connecting Bromell to the crime, such as, DNA and fingerprint evidence. The argument made was certainly in accord with the defense presented at trial and might not otherwise have been available if counsel had sought DNA testing. Accordingly, the claim raised here as ground two is without merit. <u>See generally</u> <u>Dorsey v. Chapman</u>, 262 F.3d 1181, 1186 (11 Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic

decision that no competent attorney would have chosen the strategy); <u>United States v. Guerra</u>, 628 F.2d 410, 413 (5 Cir. 1980)("Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative").

Further, even if counsel's performance could in some way be considered deficient in this regard, Bromell has not demonstrated that he was prejudiced by counsel's failure to obtain DNA testing in that there is no reasonable probability that, even if DNA testing was possible and tests had been conducted, the outcome of the trial would have been different. This is true even if the test results indicated that Bromell's DNA was not found on or underneath the fingernails. <u>See</u> <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1228 (11 Cir. 2002)(stating that "It is worth reiterating that the absence of exculpatory witness testimony from a defense is more likely prejudicial when a conviction is based on little record evidence of guilt.") By way of thorough cross-examination of the state witnesses, counsel attempted to point out alleged deficiencies in the state's case. Counsel also presented forceful closing argument, arguing to the jury that there was in fact reasonable doubt, in part, because of the lack of DNA testing. The jury apparently found the testimony of the state witnesses credible while rejecting Bromell's defense as incredible. The testimony at trial, as summarized above, includes unequivocal identification testimony from the victim and eyewitness and physical evidence linking Bromell to the crime. The police officers testified that the victim's keys were found on Bromell shortly after the subject incident had occurred and close to where the incident took place. <u>See</u> Trial Transcript at 131-135, 152-53, 193-95.

Moreover, Bromell presented no evidence whatever during the postconviction proceeding, and has not done so in this federal proceeding, that there was in fact sufficient bodily fluids on the discarded fingernails so that a DNA test could be conducted or that the results would have exonerated him. Bromell has, therefore, not demonstrated that he received constitutionally ineffective assistance of counsel as raised in ground two. See Strickland, supra. In the end, the jury weighed the testimony of the victim, eyewitnesses and the officers who testified about the apprehension and arrest of Bromell, which included the lack of fingerprint or DNA evidence, and decided to find Petitioner guilty. The evidence admitted at trial was sufficient to convict Petitioner.

Bromell claims in ground three that he received ineffective assistance of counsel when his lawyer failed to depose state witness I.D. technician Amy Seeley and call her as a defense witness at trial. He also claims that counsel rendered ineffective assistance when he did not object to the state's failure to disclose to the defense the favorable fingerprint evidence. It is first noted that, other than Petitioner's unsupported allegations, there is no competent evidence of record that I.D. technician Seeley would have provided exculpatory testimony and/or was available to testify as a witness at the time of trial.[10] As was true of claim two, the lack of a specific, affirmative showing of any exculpatory evidence leaves this claim purely speculative.

_____

[10]As was true in the state postconviction proceedings, Bromell has not supported his claim with an affidavit from the prospective witness regarding her intended testimony or her availability as a witness at the time of the trial. It appears that technician Seeley had been listed on the state's witness list, but she was not called as a witness at trial by the state.

It is also clear from review of the record that trial
counsel's decision not to call technician Seeley as a witness at
trial was a matter of trial strategy that is generally
unchallengeable in a habeas corpus proceeding. See generally
Conklin v. Schofield, 366 F. 3d 1193, 1204 (11 Cir. 2004)(stating
that which witnesses to call, if any, is a strategy decision that
should seldom be second guessed), cert. denied, 544 U. S. 952
(2005); Dorsey v. Chapman, 262 F.3d 1181 at 1186; United States v.
Guerra, 628 F.2d at 413. The record indicates that trial counsel
was clearly aware of technician Seeley before trial proceedings
commenced and the extent of her involvement in the investigation of
the instant offense, which included the lifting of fingerprints
from the vehicle and the lack of a match of the prints lifted with
Bromell's. See Trial Transcript at 193-94. Further, trial counsel
had conducted a pretrial deposition of the victim and the victim's
testimony during cross-examination revealed that her car had been
thoroughly tested for fingerprints as indicated by the dust found
in her car upon its return. Id. at 65-8. Accordingly, the record
reflects that counsel did properly investigate the facts of the
case and had, in fact, investigated this particular issue and was
well-aware of the results of technician Seeley's report regarding
the fingerprint analysis. See Trial Transcript at 194-95, 249-50.
Thus, the fact that trial counsel might not have conducted a
pretrial deposition of technician Seeley does not indicate
otherwise in that such a deposition was not necessary. Counsel's
performance can, therefore, not be deemed deficient.[11]

---

[11]Effective assistance of counsel embraces adequate pretrial investigation.
See Strickland v. Washington, 466 U.S. 668, 691 (1984)(stating that "counsel has
a duty to make reasonable investigations or to make a reasonable decision that
makes particular investigations unnecessary." See also McCoy v. Newsome, 953 F.2d
1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a
lawyer fails to conduct a substantial investigation into any of his client's
plausible lines of defense, the lawyer has failed to render effective assistance
of counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608, 615, 617-18
(11 Cir.), cert. denied, 469 U.S. 870 (1984). "Th[e] correct approach toward

Even if counsel's performance could in someway be deemed
deficient for failing to call technician Seeley as a witness at
trial, Bromell suffered no prejudice as a result of counsel's
inaction in that there is no reasonable probability that had the
prospective witness testified the outcome of the trial would have
been different. See also Wellington v. Moore, 314 F.3d 1256, 1260-
61 (11 Cir. 2002)(holding that where there is no reasonable
probability that the alibi testimony would have changed the outcome
of the trial, given the strength of the evidence admitted at trial,
the trial court's application of *Strickland*'s prejudice prong in
postconviction proceeding was not objectively unreasonable). The
record in this case demonstrates Seeley's testimony would have been
merely cumulative to other testimony presented at trial.[12] See Trial

---

investigation reflects the reality that lawyers do not enjoy the benefit of
endless time, energy or financial resources." Rogers v. Zant, 13 F.3d 384, 387
(11th Cir.1994). To be effective, a lawyer is not required to "pursue every path
until it bears fruit or until all hope withers." Williams v. Head, 185 F.3d 1223,
1237 (11 Cir. 1999)(citation omitted). "The question is whether ... ending an
investigation short of exhaustion, was a reasonable tactical decision. If so,
such a choice must be given a strong presumption of correctness, and the inquiry
is generally at an end." Mills v. Singletary, 63 F.3d 999, 1024 (11 Cir.1995)
(citation omitted). Such is the case here.

[12]For example, trial counsel's cross-examination of lead Detective Craig
Murphins with regard to the fingerprint analysis is as follows:

Q.    One of your jobs as a Lead Detective is to try and make sure all
      evidence is gathered in the case, correct?

A.    That's correct.

Q.    And that might include getting an I.D. technician involved in the
      case, correct?

A.    Yes, one was already involved prior to my involvement.

Q.    And who was that I.D. technician that was involved in this particular
      case?

A.    I believe it was Amy Bly (phonetic).

Q.    Okay. Does she also go by the name of Amy Bly Seeley?

A.    Yes.

Q.    That's S-E-E-L-E-Y?

A.    I believe so.

Transcript at 38-61, 193-195. Through skillful cross-examination of the lead detective and the victim, trial counsel revealed the state had attempted to obtain fingerprint evidence tying Bromell to the subject crime, but was unable to do so. Id. at 57-69, 135-36, 193-95. Further, as indicated above, trial counsel attempted to use the lack of testimony and evidence to the advantage of the petitioner when arguing to the jury that because of the lack of physical evidence, such as fingerprints, presented by the state there existed reasonable doubt of guilt. Id. at 249-57. Contrary to petitioner's assertion, the state had no favorable evidence which it failed to disclose and/or counsel failed to obtain, and the lack of a fingerprint match was clearly presented to the jury at trial by defense counsel. Accordingly, claim three is meritless. See Strickland, supra.

---

Q.    Okay. And as an I.D., tech one of her jobs might be to try and lift finger prints from the scene of a crime?

A.    That's one of them.

Q.    And are you aware of the fact that where the vehicle was found, do you have personal knowledge as to this I.D. tech Seeley going to where that was?

A.    I believe I saw a report after the fact that she did process the vehicle.

                         *          *          *

Q.    As a result of I.D. Tech Seeley's trying to life finger prints from the scene of the crime, you're not aware of any positive finger prints that she lifted, positive, in that they matched Terrence Bromell, are you sir?

A.    The prints were inconclusive.

Q.    Okay. Well, inconclusive in that they didn't match Terrence Bromell?

A.    Inconclusive that they didn't match anybody. Then, yes, Terrence Bromell would be in that.

Q.    Okay. And none of them matched his?

A.    No, I don't believe the structure of the print was very good.

(Trial Transcript at 193-95).

Bromell claims in ground four that counsel's performance was constitutionally ineffective when he failed to request the court to permit independent fingerprint testing of the victim's keys and failed to request the state's findings of the fingerprint testing conducted by Seeley. Bromell maintains that counsel, instead, improperly relied upon hearsay testimony to impeach the state witnesses regarding such evidence. Even if this Court were to find that trial counsel's performance was deficient for failing to seek independent testing of the keys for fingerprint evidence and/or for failing to call as a witness at trial any such defense expert, Bromell again cannot satisfy the prejudice prong of *Strickland*.[13] As indicated herein, speculation about what witnesses could have said is not enough to establish prejudice. See generally Grisby v. Blodgett, 130 F.3d 365, 373 (9 Cir. 1997). See also White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992). Again, defense counsel pointed out during his cross-examination of the officer, especially the lead detective, that although fingerprints were lifted from the subject evidence, no fingerprints matched Bromell. Id. at 113-14, 125, 193-95. This point was emphasized during closing argument. Id. at 249-50. Any evidence obtained from a defense expert witness and/or state technician Seeley would not have altered the outcome of the criminal proceeding. In other words, the lack of such evidence, does not undermine confidence in the outcome of the trial. Bromell's belief that the keys to the

---

[13] It is beyond dispute that unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied. Strickland, 466 U.S. at 687. Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." Id. at 697. See also Holladay v. Haley, 209 F.3d 1243, 1248 (11 Cir. 2000). The prejudice component of the *Strickland* test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. at 693-94. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id.

victim's truck was the only evidence linking him to the subject crimes is mistaken. As indicated above, there was also strong identification testimony from the victim and eyewitness. Other evidence admitted at trial clearly linked Bromell to the criminal incident. Ground four is, therefore, meritless. See Strickland, supra.

Bromell claims in ground five that his lawyer rendered ineffective assistance when he failed to challenge allegedly inconsistent testimony provided by the police officers and their reports. Specifically, Bromell alleges that trial counsel did not challenge inconsistencies regarding the description given of the perpetrator at the time of the offense, such as the clothing worn by the perpetrator and his physical appearance (i.e., whether he had scratch marks), and inconsistencies regarding the finding of the victim's car keys in his possession. Bromell is not entitled to habeas corpus relief on this claim. The decision to cross-examine a witness and the manner in which it is conducted are tactical decisions "well within the discretion of a defense attorney." Fugate v. Head, 261 F.3d 1206, 1219 (11 Cir. 2001)(*quoting* Messer v. Kemp, 760 F.2d 1080, 1090 (11 Cir. 1985)). Trial counsel is not ineffective simply for failing to elicit other testimony from those that testified. Id. at 1220. Rather, in order to establish the prejudice prong of *Strickland*, the Petitioner must show at least one "specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial." Id. at 1219 (*quoting Messer,* 760 F.2d at 1090). He cannot do so here.

The record refutes Bromell's claim. Trial counsel challenged the victim on certain inconsistencies between her trial testimony and previous statements given during her pretrial deposition. See

27

Trial Transcript at 65-8. Further, he pointed out the several discrepancies between the victim's testimony regarding the perpetrator's clothing and testimony that she had inflicted injury upon the perpetrator when she scratched him with her long fingernails and fought with him in an attempt to prevent him from entering her truck and driving off with her purse inside and the physical description provided by other state witnesses (i.e, no visible scratch marks). Id. at 56-63, 143, 191-93, 208. He vigorously presented such inconsistencies to the jury during closing argument and clearly attacked the victim's version of the events and her identification of Bromell as the perpetrator, attempting to show that her trial testimony was not consistent in a number of respects with the statement provided to the police. Id. at 246-47, 247-48, 251-55. Given the entire cross-examination of all state witnesses, and strong closing argument which emphasized the various inconsistencies in the case and lack of physical and scientific evidence, the Petitioner has not shown a reasonable probability that the outcome would have been different had trial counsel cross-examined any or all of these witnesses differently or pointed out additional inconsistencies. For example, the now-alleged discrepancies between the testimony of witnesses regarding the exact time and location of the keys when found in Bromell's possession and the particular officer who discovered the keys are not material.[14] See Jones v. Cain, 227 F.3d 228, 230-31 and n. 9 (5 Cir. 2000)(finding discrepancy between description of perpetrator as 5'10" tall and with no scars, and defendant's description of himself as 5'6" with two facial scars approached inanity). Habeas

---

[14]Detective Keirnan unequivocally testified that the victim's keys were discovered on Bromell's person, although he testified that he could not recall whether he discovered the victim's keys at the time he conducted the pat down search before Bromell had been arrested or shortly thereafter when Bromell was removed from the backseat of the patrol car. See Trial Transcript at 152-53. Officer Miller testified that the keys were taken from Bromell's person at the time of the pat down search. Id. at 132.

relief is not warranted based on this claim of ineffective assistance of counsel raised in ground five. See Strickland, supra.

Bromell alleges in ground six that he received ineffective assistance of trial counsel regarding his right to testify in his own defense. Specifically, Bromell claims that his lawyer improperly interfered with his right to testify as a witness in his own behalf at trial when he wrongly advised him that the state could introduce the specifics of his prior convictions if he testified. The record in this case clearly demonstrates that Bromell is not entitled to relief on this claim.

As long as an attorney advises a petitioner of his right to testify and does not prevent a petitioner from testifying, his strategic decision not to call petitioner as a witness is entitled to great deference.[15] See Gallego v. United States, 174 F.3d 1196, 1197 (11 Cir. 1999)(noting that ineffective assistance of counsel occurs when "counsel refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify"). A decision not to place the defendant on the stand in light of his

_____

[15]It is well settled that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2 Cir. 1997). Thus, every criminal defendant is privileged to testify in his own defense, or refuse to do so. Faretta v. California, 422 U.S. 806, 834 n. 45 (1975), quoting, Harris v. New York, 401 U.S. 222, 225 (1971). The burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel, and is therefore a component of effective assistance of counsel. Teague, 953 at 1533; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

prior criminal history is a judgment call of trial counsel which seldom, if ever, will support a challenge of ineffective assistance of counsel. <u>See</u> <u>Jones v. Cain</u>, 227 F.3d 228, 230-31 (5 Cir. 2000).

Review of the record indicates that after the state had rested, the proceedings were adjourned and counsel was advised to consult with Bromell regarding the decision whether he was to be called as a witness as well as a separate issue before trial proceedings resumed the following day. <u>See</u> Trial Transcript at 213. After a motion for judgment of acquittal was made and denied, defense counsel advised the court that Bromell would not be testifying as a defense witness. <u>Id</u>. at 220. To ensure that any decision made by Bromell was voluntarily, intelligently and knowingly made regarding the decision to testify or not to testify at trial, the trial court conducted a colloquy with Bromell. <u>Id</u>. at 220-21. The court first advised Bromell that he had the absolute right to testify in his own defense if he wished to do so and also had the absolute right not to testify, and Bromell indicated that he understood. <u>Id</u>. at 220. The court expressly apprised Bromell that the decision was solely his, but told him that if he chose to testify that the jury would learn of the number of his prior felony convictions and misdemeanor convictions involving dishonesty or lying and that the state could potentially impeach his testimony with certain suppressed statements that had been found in violation of his *Miranda*-rights.[16] <u>Id</u>. at 220-21. Bromell again indicated that he understood. <u>Id</u>. at 221. Bromell was asked if he had sufficient time to discuss with defense counsel whether he wanted to take the witness stand or not and Bromell responded affirmatively. <u>Id</u>. The

---

[16]In Florida, the prosecutor is allowed to inquire as to the number of prior convictions, although not permitted to ask the defendant to identify the particular crimes for which he was convicted. <u>See</u> <u>Johnson v. State</u>, 380 So.2d 1024 (Fla. 1979). The same is true in federal prosecutions. <u>See</u> <u>United States v. Timblin</u>, 551 F.2d 1001 (5 Cir. 1977).

court then asked Bromell for his decision, and Bromell answered that he had decided not to testify. Id.

In this case, after being fully advised of his right to testify and the ramifications of testifying, Bromell affirmatively stated on the record that he had elected not to testify at trial. This demonstrates his ultimate accord with the defense strategy. Such advice of counsel was clearly reasonable under the circumstances, amounting to proper trial strategy, given the fact that Bromell had at the time of trial a lengthy criminal record.[17] While not being able to reveal the specifics of the offenses, the prosecutor would have been able to inform the jury that Bromell had been convicted of twelve prior felony offenses. Such information would clearly undermine the credibility of Bromell's testimony as a witness in his own behalf. Further, it is apparent from the record that the state also intended to challenge Bromell's credibility with his earlier statements made to the police which had been suppressed by the trial court. See Trial Transcript at 220-21. If Bromell is suggesting that he was in some way pressured by counsel into relinquishing his right to testify, without competent evidence that Bromell was in fact subject to some sort of coercion or undue influence, it cannot be assumed in this federal proceeding that Bromell's decision not to testify or acquiescence to a trial strategy in which he did not testify was anything but voluntary. See Lambrix v. Singletary, 72 F.3d 1500, 1508 (11 Cir. 1996)("Without evidence that [the defendant] was subject to continued coercion, we cannot assume that [the defendant's] apparent acquiescence to a trial strategy in which he did not

---

[17]Bromell had been convicted of at least twelve prior felony offenses, including the offenses of robbery with a gun or deadly weapon, armed burglary, grand theft motor vehicle, aggravated assault, and carrying a concealed weapon. For a complete listing of the convictions, see the records maintained by the Florida Department of Corrections at http://www.dc.state.fl.us/.

testify was anything but voluntary."), <u>aff'd</u>, 520 U.S. 518 (1997). Bromell has failed to demonstrate that counsel's performance was deficient, as alleged.

Moreover, even if this Court were to find that counsel's advice to Bromell regarding his right to testify was in someway deficient, Bromell has not been prejudiced by the alleged deficient performance of counsel. Bromell was properly advised by the court that, although the state is not permitted to ask a defendant to identify the particular crimes for which he had been convicted, in the instant case, the state might be permitted to question him regarding his prior convictions that involved dishonesty.[18] Additionally, through strong cross-examination of the state witnesses, and during an impassioned closing argument, defense counsel vigorously pursued the defense that the state had clearly failed to prove beyond a reasonable doubt that Bromell had been the armed perpetrator. Trial counsel also admitted into evidence a photograph of Bromell and a stipulation entered into with the state that the subject photograph had been taken before the instant criminal incident. <u>See</u> Trial Transcript at 225-26. The photograph showed markings on Bromell's face. <u>Id</u>. As pointed out above, defense counsel continually attempted to point out to the jury the lack of physical evidence linking Bromell to the crime,

---

[18]It is noted that no time during the colloquy with the court did Bromell mention the allegation that defense counsel had advised him that the jury could learn about the specifics of his prior convictions that did not involve dishonesty or lying if he were to testify. Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his <u>pro</u> <u>se</u> petition to be of probative value. <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011-12 (5 Cir. 1983). <u>See also, e.g.</u>, <u>Panuccio v. Kelly</u>, 927 F.2d 106, 109 (2 Cir. 1991)(noting that a defendant's testimony after the fact suffers from obvious credibility problems). Also, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. <u>See</u> <u>United States v. Ammirato</u>, 670 F.2d 552 (5 Cir. 1982); <u>United States v. Sanderson</u>, 595 F.2d 1021 (5 Cir. 1979); <u>King v. United States</u>, 565 F.2d 356 (5 Cir. 1978); <u>Clayton v. Estelle</u>, 541 F.2d 486 (5 Cir. 1976).

and the lack of reliable identification evidence linking him to the crime.  As was the prerogative of the jury, it rejected the defense presented, and instead believed the strong evidence admitted by the state.  This Court must defer to the jury's judgment as to the weight and credibility of the evidence.  See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, Jackson v. Virginia, 443 U.S. 307, 326 (1979).

Also, in this federal proceeding, Bromell has not provided this Court with exculpatory testimony. He states that he would have testified that the car keys found in his possession were his keys and that his car had run out of gasoline nearby, explaining his presence at the gas station. He further states that his brother would have similarly testified that he picked up Bromell's car near the gas station so that it would not be towed.[19] The evidence of guilt presented at trial was strong.  The evidence includes testimony from Officer Keirnan that a search of Bromell produced two set of keys, one belonging to the victim. See Trial Transcript at 152-53. Other officers testified that they had observed Bromell running and when he was finally apprehended in the parking lot of

---

[19]Although the subclaim that defense counsel rendered ineffective assistance of counsel when he failed to call Bromell's brother as a defense witness is procedurally barred for the reasons expressed above, it appears that even if reviewable Bromell would not be entitled to habeas corpus relief on the claim in that it is meritless. Bromell states in his Rule 3.850 motion that he had advised counsel that his brother should be called as a witness, but counsel chose not to call him because Bromell's brother had also been convicted of crimes. See Motion for Postconviction Relief. (DE# 10; Ex. 13). Counsel's decision not to call the subject prospective witness as a defense witness was clearly reasonable under the circumstances here. The prospective witness' testimony would have little or no credibility given that he was a convicted felon and Bromell's brother, rendering his testimony subject to impeachment by the state. This decision is clearly a strategic decision that is not challengeable here. See Conklin v. Schofield, 366 F. 3d 1193, 1204 (11 Cir. 2004), cert. denied, 544 U. S. 952 (2005). See also United States v. Harden, 846 F.2d 1279, 1231-32 (9 Cir.1988)(no deficient performance where there was no evidence that proposed witness would have testified, witness was a convicted felon with extensive criminal history, and counsel determined witness had credibility problems).

the gasoline station he was sweating heavily. Id. at 128-31, 147-50. Thus, the alleged deficient performance of counsel did not result in prejudice to Bromell in that any such testimony would not have changed the outcome of the instant proceeding. See Brecht v. Abrahamson, 507 U.S. at 623, quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946).

In conclusion, the record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made appropriate objections, presented defense evidence in the form of a photograph taken before the subject criminal incident indicating scratches on Bromell's face, moved for judgment of acquittal, and presented a forceful closing argument. Bromell has failed to demonstrate that he was deprived of constitutionally effective assistance of counsel for any or all of the reasons alleged above. Moreover, contrary to Bromell's apparent assertion, the result of the trial was not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). The fact that the defense presented at trial was not successful does not mean that counsel's performance was constitutionally ineffective. Defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.[20] United States v. Cronic, 466 U.S. 648, 659

---

[20]It appears that Bromell might be attempting to raise a claim pursuant to United States v. Cronic, 466 U.S. 648 (1984). In some cases, counsel's failure or inability to subject the prosecution's case to meaningful adversarial testing violates the Sixth Amendment and makes the adversarial process presumptively unreliable. Id. at 659.  When such a violation occurs, so as to render the trial presumptively unreasonable, no specific showing of prejudice is required.  Id. The Eleventh Circuit applies the Cronic dicta only in a "narrow range of cases" where there is a "fundamental breakdown of the adversarial process," Chadwick v. Green, 740 F.2d 897, 900-01 (11 Cir. 1984), and concentrates instead on whether

(1984).

Based upon the foregoing, the trial court properly rejected Bromell's challenges to his convictions on the basis of ineffective assistance of trial counsel, which finding was affirmed by the state appellate court, and the ruling should therefore stand and relief be denied pursuant to 28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

## B. <u>Defective Charging Document</u>

Bromell alleges in his final ground for relief, claim seven, that the trial court lacked jurisdiction to enter judgment in the case, because the charging instrument was not based upon sworn testimony of a material witness, but based solely upon the investigating officer's affidavit. This claim is not cognizable in this federal habeas corpus proceeding.

Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). More specifically, federal habeas relief may only be granted on a state charging document where that indictment was so defective as to deprive the trial court of jurisdiction. <u>DeBenedictis v. Wainwright</u>, 674 F.2d 841, 842-43 (11 Cir. 1982), <u>citing</u>, <u>Branch v. Estelle</u>, 631 F.2d 1229, 1233 (5 Cir. 1980). A charging document that sets forth the elements of the offense in language clear enough to enable the defendant to plead a bar in jeopardy does not raise a jurisdictional defect. <u>Alexander v. McCotter</u>, 775 F.2d 595, 599 (5 Cir. 1985). Such was the case here.

---

or not the accused was denied a fair trial. <u>Hammonds v. Newsome</u>, 816 F.2d 611, 613 (11 Cir. 1987). In this case, Bromell was in no way denied a fair trial. As indicated herein, the record demonstrates that counsel subjected the state's case to a meaningful challenge.

Further, the identical claim presented in this federal proceeding was raised in the Florida courts and rejected, with the state court finding the subject information not defective under Florida law. This Court, therefore, need not address the issue in a habeas corpus proceeding. See McKay v. Collins, 12 F.3d 66, 68 (5 Cir.), cert. denied, 513 U.S. 854, 115 (1994); Branch v. Estelle, 631 F.2d at 1233. See also Alexander, 775 F.2d at 599 (holding that state court's refusal to grant habeas relief is tantamount to finding that indictment does not contain a jurisdictional defect).

Even if reviewable, Bromell would not be entitled to relief on this claim, because it is meritless. In Florida, there is no requirement that sworn affidavits be attached to the arrest report. Nor is there a requirement that sworn affidavits be attached to the information. See State v. Bacon, 385 So.2d 1160, 1163 (Fla. 2 DCA 1980). The information here contains the required sworn oath of the Assistant State Attorney certifying that "that testimony has been received under oath from the material witness or witnesses for the offense(s), and the allegations as set forth in the foregoing Information would constitute the offense(s) charged, and that the prosecution is instituted in good faith." See Information. (Exhibit A attached to Rule 3.850 motion, as supplemented)(DE# 10; Ex. 13). This sworn oath of the prosecutor that he received testimony under oath from the material witness or witnesses for the offense is clearly sufficient pursuant to applicable Florida law. See Fla.R.Crim.P. 3.140(g). It is also noted that there is no evidence in the record that the evidence presented to the Assistant State Attorney could not lawfully support the Information. The arresting officers and  victim of the crime testified at trial regarding the subject offense. Their testimony was clearly sufficient to support the charge brought in the information, and the allegations contained in the arrest affidavit do not materially differ from the

36

testimony presented at trial. <u>See</u> Probable Cause Affidavit. (Exhibit B attached to Rule 3.850 motion, as supplemented)(DE# 10; Ex. 13). Accordingly, Petitioner's assertion that the charging documents in this case were fatally defective is hereby rejected. <u>Id</u>.

## VIII. <u>Evidentiary Hearing</u>

Petitioner's request for an evidentiary hearing on any or all of his claims of ineffective assistance of counsel and/or any other claim raised in this federal petition should be denied. To be entitled to an evidentiary hearing on habeas claims, the petitioner must allege facts that, if proved at the hearing, would entitle him to relief. <u>See</u> <u>Schriro v. Landrigan</u>, 550 U.S. ___, ___, 127 S.Ct. 1933, 1940 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). For reasons discussed herein, an evidentiary hearing is not required for the disposition of this case. <u>Id</u>. <u>See also</u> <u>Atwater v. Crosby</u>, 451 F.3d 799, 812 (11 Cir. 2006)(addressing petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Bromell has failed to demonstrate the existence of any factual dispute that warrants a federal evidentiary hearing.

## IX. <u>Conclusion</u>

It is therefore recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District

Judge within ten days of receipt of a copy of the report.

Signed this 20th day of August, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Terrence Bromell, Pro Se
     DC# 456412
     South Bay Correctional Facility
     600 U.S. Highway 27 South
     South Bay, FL 33493


     Melanie Dale Surber, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428

38